48 F.3d 1139
 63 USLW 2559, 32 Collier Bankr.Cas.2d 1795
 Barbara W. RICHMAN, Plaintiff-Appellant,
v.
M. John STRALEY; David D. Bird; John E. Logan; United
States of America, by and through the the Justice
Department, Office of United States
Trustee, Defendants-Appellees.
 No. 93-4189.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 14, 1995.
 
 Barbara W. Richman (Glen M. Richman, with her on the briefs) of Richman & Richman, Salt Lake City, UT, for plaintiff/appellant.
 Carlie Christensen, Asst. U.S. Atty. (Scott M. Matheson, Jr., U.S. Atty., with her on the brief), Salt Lake City, UT, for defendants/appellees.
 Before SEYMOUR, Chief Judge, and LOGAN, and EBEL, Circuit Judges.
 SEYMOUR, Chief Judge.
 
 
 1
 Barbara W. Richman brought an action against the United States and three federal officials, asserting that defendants' appointment of a new standing trustee in the District of Utah and assignment of all new cases to the new trustee constituted a de facto removal of Ms. Richman as the standing trustee in violation of her right to due process under the Fifth Amendment to the Constitution. Because we conclude that Ms. Richman did not have the requisite property interest to support a due process claim, we agree with the district court that she failed to allege a due process violation. We also affirm the court's dismissal of Ms. Richman's related state tort claims.
 
 I.
 
 2
 From January 20, 1988 to the present, Ms. Richman has been a standing trustee in the district of Utah pursuant to 28 U.S.C. Sec. 586(b). In that capacity, she serves as the trustee in federal bankruptcy cases filed under chapters twelve and thirteen of the bankruptcy code. The individual defendants are officials in the United States Trustee program.[1]
 
 
 3
 On June 29, 1992, John Straley and David Bird informed Ms. Richman that they would appoint a new standing trustee for the district of Utah and assign to her all new bankruptcy cases arising under chapters twelve and thirteen. The next day, Mr. Straley made the promised appointment, which John Logan ratified and approved. Mr. Straley subsequently filed a motion to remove Ms. Richman as a standing trustee in her existing cases. Upon stipulation of the parties, however, the court dismissed the removal proceedings.
 
 
 4
 Ms. Richman filed this suit in federal district court alleging unlawful deprivation of property without due process of law,[2] tortious interference with prospective economic relations, and libel and slander. The district court granted defendants' motions to dismiss the complaint for failure to state a claim.
 
 II.
 
 5
 Ms. Richman first asserts on appeal that defendants' refusal to assign her any new cases constitutes a deprivation of her property without due process. A plaintiff has a property interest in those things to which she has "a legitimate claim of entitlement." Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). A claim of entitlement must stem from an independent source such as a state or federal law. Id. In order to invoke the protections of the Due Process Clause, Ms. Richman must prove that her appointment as a standing trustee created a claim of entitlement to serve as trustee in future cases.
 
 
 6
 Ms. Richman contends that the federal statutory scheme governing the appointment and removal of standing trustees establishes her entitlement. In particular, she relies upon 28 U.S.C. Sec. 586(b) and 11 U.S.C. Sec. 324(a). An analysis of the text and legislative history of each, however, reveals that standing trustees do not have a property right in the assignment of new cases.
 
 
 7
 Section 586(b) gives the United States Trustee the power to appoint standing trustees subject to approval of the Attorney General. Generally, the power of removal is implicit in the power of appointment unless the appointment carries with it a definite term of office or a constitutional or statutory provision limits the removal power. See Carlucci v. Doe, 488 U.S. 93, 99, 109 S.Ct. 407, 411, 102 L.Ed.2d 395 (1988). Although the standing trustee serves an indefinite term of office, Ms. Richman contends that 11 U.S.C. Sec. 324 explicitly denies the United States Trustee the power of removal and places sole authority to remove in the hands of the district court.
 
 
 8
 Section 324(a) provides that "[t]he court, after notice and a hearing, may remove a trustee ... for cause." Ms. Richman urges us to apply this requirement to future cases in which the standing trustee might serve. Legislative history suggests to the contrary that section 324(a) applies only to an individual case in which the standing trustee is currently serving. Congress added section 324(b) to the statutory scheme to clarify that "unless the court orders otherwise, removal of a private trustee for cause in one case [pursuant to section 324(a) ] constitutes removal of that trustee in all other cases in which the trustee is serving." H.R.Rep. No. 764, 99th Cong., U.S. Code Cong. & Admin. News 1986, 5227, 5236 (1986) (emphasis added). Although Congress explicitly added the presumption that removal in one case would constitute removal in all current cases, it omitted any mention of future cases. This omission implies that no property right vests until actual assignment of the case. Because the standing trustee serves no definite term and Congress made no explicit provision to the contrary, the party with the power of appointment may terminate that appointment at any time by refusing to assign new cases to the standing trustee.
 
 
 9
 Ms. Richman argues that allowing the United States Trustee to terminate a standing trustee's appointment is contrary to legislative intent. She asserts that Congress created this statutory scheme "to eliminate the cronyism and appearance of impropriety inherent in the [existing] procedure," which provided for appointment and removal by the bankruptcy court. Aplt. Reply Br., at 9.
 
 
 10
 Although perceived cronyism was a concern, Ms. Richman has applied this concern to the wrong context. Congress did not view the fact that the same body both appointed and removed trustees as problematic. Instead, the existing system was tainted because the trustees "appeared in bankruptcy court before the very same judges who appointed them." H.R.Rep. 764, 99th Cong., at 5230.
 
 
 11
 In such circumstances, a trustee would often be reluctant to take positions contrary to the judges who appointed the trustee, even though a trustee was supposed to be an impartial administrator of the estate. This awkward relationship between trustees and judges created an improper appearance of favoritism, cronyism, and bias, and generated great disrespect for the bankruptcy system.
 
 
 12
 Id. Rather than creating a system of checks and balances as Ms. Richman claims, Congress sought to strip bankruptcy courts of their administrative role so that they could better perform their judicial tasks. Allowing the same nonjudicial body to both appoint and terminate the appointment of standing trustees is thus consistent with legislative intent.[3]
 
 
 13
 Ms. Richman concedes she would not have had a property interest under the prior statutory scheme because the bankruptcy court could decline to give a trustee additional cases for arbitrary reasons. See, e.g., In the Matter of Chapter 13, Pending and Future Cases, 19 B.R. 713, 714-15 (Bankr.W.D.Wash.1982) (court order terminating standing trustee as to new cases without notice and hearing is "entirely proper"). Under the normal rules of statutory construction, "if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." In re Schollett, 980 F.2d 639, 641 (10th Cir.1992) (citing Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection, 474 U.S. 494, 501, 106 S.Ct. 755, 759, 88 L.Ed.2d 859 (1986)). Congress failed to express any intent to expand due process protections to future cases, and in fact made no changes at all to section 324(a), the removal provision upon which Ms. Richman relies. We therefore conclude that the statutory scheme does not create a property right in the assignment of future cases.
 
 
 14
 Ms. Richman also claims that her alleged property right stems from rules and explicit understandings created by defendants which may be the sources of such rights, see generally Perry v. Sinderman, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). We find no rules or understandings here which entitle Ms. Richman to due process protections, however. Ms. Richman asserts that none of the regulations pertaining to standing trustees provide authority for their termination. As noted above, such authority is implicit in the statutory power of appointment. Ms. Richman also claims that the order fixing her compensation at a maximum annual amount provides a guarantee of continued employment. We disagree. While the order imposes a cap on the amount a standing trustee may earn, it does not create a right to that amount. Ms. Richman has failed to offer one rule or understanding which explicitly confers upon her an expectancy of appointment in future cases.
 
 
 15
 On the contrary, other documents explicitly reserve the termination power implicit in section 586. Ms. Richman's official Designation of Appointment as a standing trustee provides that "[t]his appointment ... may be terminated at any time." Aplt.App. at 69. The Ratification and Approval of her appointment contains a caveat that "this approval may be withdrawn at any time." Id. Finally, The Legal Manual for United States Trustees provides, "If the standing trustee is not performing in a manner acceptable to the United States Trustee and in conformity with these guidelines, then the United States Trustee may remove the standing trustee, subject to the approval of the Director." Id. at 385. These documents support our conclusion that Ms. Richman does not have a claim of entitlement to future cases and therefore does not have a constitutionally protected property right.
 
 III.
 
 16
 Ms. Richman also appeals the district court's dismissal of her state law claims. The court substituted the United States as the sole defendant with respect to those claims under the Federal Employees Liability Reform and Tort Compensation Act (FELRTCA), 28 U.S.C. Sec. 2679 (1994), and thereafter found the claims barred by sovereign immunity under the Federal Tort Claims Act (FTCA), 28 U.S.C. Secs. 2671-2680 (1994). Ms. Richman appeals the substitution of the government as sole defendant as to all claims, and the determination that sovereign immunity bars her claim for tortious interference with prospective economic relations.[4] We review de novo a district court's dismissal of a complaint for failure to state a claim. Mock v. T.G. & Y. Stores Co., 971 F.2d 522, 528-29 (10th Cir.1992).
 
 
 17
 Under section 2679(d)(1) of FELRTCA, any civil action against an individual defendant who is a government employee[5] acting within the scope of his employment is deemed an action against the United States. The United States is then substituted as the sole defendant. Id. To invoke this provision, the Attorney General or her designee must certify that the defendant was acting within the scope of his employment at the time of the alleged tort. Id. The United States Attorney for the District of Utah, acting pursuant to his delegated authority, see 28 C.F.R. Sec. 15.3 app. (1990), signed a certification of scope of employment for defendants. This certification, although subject to de novo review, is prima facie evidence that an employee's challenged conduct was within the scope of his employment. The plaintiff then bears the burden of rebutting the scope-of-employment certification with specific facts. See Green v. Hall, 8 F.3d 695, 698 (9th Cir.1993), cert. denied, --- U.S. ----, 115 S.Ct. 58, 130 L.Ed.2d 16 (1994); Brown v. Armstrong, 949 F.2d 1007, 1012 (8th Cir.1991); Hamrick v. Franklin, 931 F.2d 1209, 1211 (7th Cir.), cert. denied, 502 U.S. 869, 112 S.Ct. 200, 116 L.Ed.2d 159 (1991).
 
 
 18
 For purposes of the FELRTCA, "scope of employment" is defined by the respondeat superior law of the state where the incident occurred. Nichols v. United States, 796 F.2d 361, 365 n. 4 (10th Cir.1986) (citing Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955) (per curiam)). Under Utah law, "scope of employment" includes:
 
 
 19
 those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment.
 
 
 20
 Birkner v. Salt Lake County, 771 P.2d 1053, 1056 (Utah 1989) (quoting W. Keeton, Prosser & Keeton on the Law of Torts Sec. 70, at 502 (5th ed. 1984)). Although determining whether an employee acted within the scope of employment is generally a factual issue, "[i]n situations where the activity is so clearly within or without the scope of employment that reasonable minds cannot differ, it lies within the prerogative of the trial judge to decide the issue as a matter of law." Clover v. Snowbird Ski Resort, 808 P.2d 1037, 1040 (Utah 1991).
 
 
 21
 Utah courts have focused on three factors in defining when an employee's conduct falls within the scope of employment. First, the conduct must be generally related to that which the employee is employed to perform. Id. at 1040. The conduct must occur substantially within the hours and ordinary spatial boundaries of the employment. Id. Finally, the employee's conduct must be " 'motivated, at least in part, by the purpose of serving the employer's interest.' " Id. (quoting Birkner, 771 P.2d at 1057).
 
 
 22
 We have concluded that defendants had the statutory authority to terminate Ms. Richman's appointment as standing trustee, thus the action was clearly of the kind that defendants are employed to perform. Ms. Richman now claims that Mr. Straley met "surreptitiously" with her employees at his personal residence in the evening. Aplt.Br. at 40. She asserts that she made this claim below in her motion for new trial under a heading "Richman has constitutionally protected rights." See Aplt.App. at 421-22; Aplt. Reply Br. at 22 n. 13. Ms. Richman never asserted below that the alleged surreptitious meeting somehow undermined the certification that defendants' conduct was within the scope of their employment. The brief in support of the motion referred to an alleged "clandestine meeting," but it did not state the time or place at which it supposedly occurred. Aplt.App. at 422. In any event, Ms. Richman has made no claim that the actual conduct at issue here, i.e., her termination, occurred outside of the normal business environment. Furthermore, she has alleged no facts to support her conclusory allegation that defendants terminated her appointment for the purpose of securing her license for Mr. Straley or his designee. Instead, the termination of one standing trustee and appointment of another is the type of action that was most likely motivated at least in part by the purposes of the United States Trustee Program. Because Ms. Richman failed to allege facts sufficient to undermine the correctness of the scope-of-employment certification of the individual defendants, the substitution of the United States as sole defendant in Ms. Richman's claim for tortious interference with prospective economic relations was proper.
 
 
 23
 Ms. Richman also appeals the certification that the individual defendants were acting within the scope of their employment when they allegedly libeled and slandered her by publishing both verbal and written statements accusing her of improperly administering cases assigned to her as a standing trustee. Because the allegedly defamatory statements were made in connection with the removal proceeding filed in bankruptcy court, the action was consistent with the administrative and supervisory responsibilities of the individual defendants. Furthermore, Ms. Richman does not assert that the statements were made outside of defendants' normal business hours or location. Nor has she alleged facts demonstrating that defendants were not motivated at least in part by their duties to the United States Trustee Program. We therefore hold that the district court did not err in substituting the United States as sole defendant in the libel and slander claims.
 
 
 24
 Once the United States is substituted as the defendant under FELRTCA, the FTCA is plaintiff's sole remedy. See FELRTCA, 28 U.S.C. Sec. 2679(d)(4). Ms. Richman appeals the trial court's determination that sovereign immunity barred her suit under the FTCA for tortious interference with prospective economic relations. It is well established that the United States is immune from suit unless it has consented to be sued, and its consent to be sued defines the terms and conditions upon which it may be sued. United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351-52, 63 L.Ed.2d 607 (1979). Ms. Richman claims that the United States waived its immunity. We disagree.
 
 
 25
 Section 2680 of the FTCA excepts from the waiver of sovereign immunity "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. Sec. 2680(a). In determining the scope of the discretionary function exception, we apply the two-step test adopted by the Supreme Court in Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). See Kiehn v. United States, 984 F.2d 1100, 1102 (10th Cir.1993). First, we must determine whether the challenged conduct involves " 'an element of judgment or choice' " or whether it involves " 'a federal statute, regulation, or policy [that] specifically prescribes a course of action for an employee to follow.' " Id. (quoting Berkovitz, 486 U.S. at 536, 108 S.Ct. at 1958). The exception applies in the former but not the latter. See id. If the conduct survives the first step, then we must " 'determine whether that judgment is the kind that the discretionary function exception was designed to shield.' " Id. at 1103 (quoting Berkovitz, 486 U.S. at 536, 108 S.Ct. at 1959).
 
 
 26
 We concluded above that defendants had the authority to terminate Ms. Richman's appointment as standing trustee at any time. Decisions regarding employment and termination are inherently discretionary, especially where, as here, the relevant statutes provide no guidance or restrictions. See generally Williams v. Collins, 728 F.2d 721 (5th Cir.1984). Such sensitive decisions are precisely the types of administrative action the discretionary function exception seeks to shield from judicial second-guessing. Consequently, Ms. Richman's claim against the United States falls within the discretionary function exception to the FTCA and is therefore barred by sovereign immunity.
 
 
 27
 In sum, we hold that the district court correctly dismissed Ms. Richman's due process claims because she did not have a property interest in her continued service as standing trustee. We also uphold the court's substitution of the United States as defendant in the state law claims and its application of the doctrine of sovereign immunity to bar those claims. Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 M. John Straley is the Assistant United States Trustee for the district of Utah. David D. Bird serves as the United States Trustee for the judicial districts of Colorado, Utah, and Wyoming. John E. Logan is the Executive Director of the Executive Office for United States Trustees
 
 
 [2]
 Ms. Richman bases her due process claims upon both the Fifth Amendment of the United States Constitution and Article I Sections 1 and 7 of the Utah Constitution
 
 
 [3]
 Ms. Richman also relies upon the fact that Congress has twice declined to amend Sec. 324 and transfer the power of removal from the bankruptcy court to the United States Trustee. Aplt.Br. at 16. We have already concluded that the removal authority contained in Sec. 324 pertains only to existing cases. We thus reject the notion that any congressional inaction regarding Sec. 324 bears upon the United States Trustee's inherent authority to terminate the appointment of a standing trustee and to preclude her from serving as trustee in future cases
 
 
 [4]
 Ms. Richman does not appeal the district court's conclusion that the intentional tort exception to the Federal Tort Claims Act, 28 U.S.C. Sec. 2680(h), bars her libel and slander claims against the United States if it has been properly substituted as sole defendant
 
 
 [5]
 Officers of federal agencies are treated as federal "employees" for purposes of the FELRTCA. See 28 U.S.C. Sec. 2671. As officials in the United States Department of Justice, specifically the Executive Office for United States Trustees, Mr. Bird, Mr. Straley, and Mr. Logan are eligible for FELRTCA protection