**Donald M. ROBINER, U.S. Trustee, Plaintiff,**

**v.**

**Michael V. DEMCZYK, Chapter 12 Trustee, Defendant.**

**Nos. 5:01 CV 1129, 5:01 CV 1130, 5:01 CV 1131. Bankruptcy Nos. 00–52012, 95–50187, 93–51659.**

United States District Court, N.D. Ohio, Eastern Division.

Oct. 24, 2001.

John L. Daugherty, Washington, DC, Joseph A. Guzinski, U.S. Department of Justice, Washington, DC, Andrew R. Vara, U.S. Department of Justice, Cleveland, OH, for plaintiff.

Michael V. Demczyk, Uniontown, OH, pro se.

## MEMORANDUM OPINION AND ORDER

DOWD, District Judge.

The above-captioned bankruptcy appeals were filed in the Bankruptcy Court by the U.S. Trustee, Donald M. Robiner, on April 5, 2001. They were subsequently docketed in the District Court for the Northern District of Ohio and later consolidated.[1] This Court has jurisdiction to hear this appeal, which would ordinarily be taken to the Bankruptcy Appellate Panel,[2] because, pursuant to 28 U.S.C. § 158(c)(1)(A),[3] the appellant filed his election. (Bank.Doc. No. 35).[4] For the reasons set forth below, the Bankruptcy Court is AFFIRMED in all three appeals.

These appeals are brought under 28 U.S.C. § 158(a)(1).[5] The U.S. Trustee is

1. Case No. 5:01CV1130 was originally assigned to Judge James Gwin and Case No. 5:01CV1131 was assigned to Judge Dan Polster. Those two cases were transferred to the docket of the undersigned and consolidated with Case No. 5:01CV1129.

2. General Order No. 97–27, entered by then Chief Judge George W. White on July 9, 1997, authorized the Bankruptcy Appellate Panel service "to hear and determine appeals originating in Northern District of Ohio, nunc pro tunc January 1, 1997."

3. Section 158 provides, in relevant part:
(c)(1) Subject to subsection (b), each appeal under subsection (a) shall be heard by a 3–judge panel of the bankruptcy appellate panel service established under subsection (b)(1) unless—
(A) the appellant elects at the time of filing appeal; or

(B) any other party elects, not later than 30 days after service of notice of the appeal; to have such appeal heard by the district court.

4. Although each of the three appeals has its own docket, Case No. 5:01 CV 1129 has been designated the lead case. Therefore, all record references are to that case docket, including references to the record in the Bankruptcy Court, unless otherwise noted.

5. This section provides, in relevant part:
(a) The district courts of the United States shall have jurisdiction to hear appeals
(1) from final judgments, orders, and decrees; ...
... of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title....
The three bankruptcy cases out of which the instant case arose were properly before the

appealing orders of Bankruptcy Judge Marilyn Shea–Stonum entered on March 26, 2001 and November 28, 2000 in the Chapter 12 cases of *In re Dale R. Brookover,* 259 B.R. 884 (Bkrtcy.N.D.Ohio 2001); *In re Montgomery Farms,* 259 B.R. 884 (Bkrtcy.N.D.Ohio 2001); and *In re Jack Guilitto,* 259 B.R. 884 (Bkrtcy.N.D.Ohio 2001).[6]

On June 4, 2001, the Appellant filed his brief. Not surprisingly, there has been no response in any form from the "Appellee," Michael V. Demczyk.[7]

The record on appeal shows a letter dated November 7, 2000 from the United States Trustee (the "UST") to the Chapter 12 Standing Trustee (the "Trustee"). (Bankr.Doc. No. 14).[8] In the letter, which was copied to all of the bankruptcy judges (Bankr.Doc. No. 15) and others, the UST accepted the Trustee's letter of resignation effective November 30, 2000.[9] The letter also indicated that notice of the resignation (and of appointment of the UST as interim trustee) would be filed in each Chapter 12 case.

On November 28, 2000, Bankruptcy Judge Marilyn Shea–Stonum issued the following order in all three Chapter 12 cases:

> Michael V. Demczyk is the Standing Chapter 12 Trustee in this case. The Court recently received correspondence from Donald M. Robiner, United States Trustee, Ohio/Michigan Region 9, which consists of two letters dated November 7, 2000 (the "Letters") (Docket Nos. 14 and 15). The Letters raise a question about whether Mr. Demczyk wishes to continue to serve as the Chapter 12 Trustee. If a change is requested, the Court will await a motion filed and served on all parties in interest. *See* 11 U.S.C. § 324. Mr. Demczyk is to continue to carry out his responsibilities in this case, absent a Court Order to the contrary.

(Bankr.Doc. No. 16).

On December 7, 2000, the UST filed a motion for reconsideration of the Order, urging that "the Bankruptcy Code and Rules do not support the Court's apparent contention that a removal action under section 324 is the exclusive means for a trustee to vacate his or her position." (Bankr.Doc. No. 17, at 3). The UST also stated that

> the Court's requirement of a motion to remove if applied to all resignations would unduly burden the Courts and the Bankruptcy System. Panel and standing trustees often resign from individual cases because of conflicts of interest.

---

bankruptcy court pursuant to 28 U.S.C. §§ 157(b)(2)(A) and 1334.

6. Each appeal names the U.S. Trustee as the Appellant and the Chapter 12 Standing Trustee, Mr. Demczyk, as the Appellee. This is a little misleading, in that the real dispute seems to be almost in the nature of a mandamus action brought by the U.S. Trustee against a bankruptcy judge.

7. Under Fed.R.Bankr.P. 8009, the appellee had 15 days after the service of the appellant's brief to file his own brief. *See also* Order of May 9, 2001 (Doc. No. 5). On July 12, 2001, at a time when "appellee's" brief was already past due, the Court's law clerk made a telephone inquiry to Michael V. Demczyk, who indicated that he was baffled as to why he had been named as the Appellee.

8. Again, the Court notes that all references are to the record of *In re Dale R. Brookover, et al.,* Bankr.Case No. 00–52012.

9. The bankruptcy judge assigned to the relevant cases directed the bankruptcy clerk to file copies of the letters in all three cases. There was apparently no service of the letters on any parties or attorneys, a fact for which the bankruptcy court faulted the UST. (*See* Memorandum of Opinion and Order, March 26, 2001, Bankr.Doc. No. 31, at 4).

The filing of a motion to remove would be impracticable and would delay the appointment of a successor trustee. This delay could create problems for the successor trustee, who must operate under strict deadlines. *E.g.,* Fed.R.Bankr. P.2003 (time for 341 meeting), 4003 (exemptions), 4004 (objection to discharge).

(*Id.* at 4).

On February 16, 2001, Judge Shea–Stonum conducted a hearing on the motion for reconsideration. There, she stated the crux of the issue in her mind:

> THE COURT: Okay, now at issue here is [sic] my mind is not whether Mr. Demczyk can be forced to continue to serve in cases where he was initially appointed, but rather the appropriate channels for the resignation. Mr. Robiner says, I have accepted your resignation. In his letter, he says I have accepted your resignation. I, the U.S. Trustee, believe I have the power to say you can resign from pending cases that are on a particular judge's docket. That is the rub for me. Trustees can and do resign. There is no question in my mind that in terms of Mr. Demczyk's appointment to any additional Chapter 12 cases—that's the U.S. Trustee's business. The U.S. Trustee can decide that Mr. Demczyk will not be appointed to newly filed cases. Congress has taken bankruptcy judges out of the business of the initial appointment of trustees. *But once a trustee is serving in a pending case, please tell me how the U.S. Trustee views that individual. Is that individual not then an officer of the Court? And if somebody is going to accept the resignation of that individual, is it not the judge who accepts the resignation of the individual?*

(Tr. at 4–5, Bankr.Doc. No. 39) (emphasis added). Counsel for the UST indicated in response that, since the UST had the appointing power, he also had the power to accept the resignation of the Trustee. To that, the Bankruptcy Judge responded, in relevant part:

> ... reading the correspondence that Mr. Robiner ... shared—with me, Mr. Robiner appears to have said, we're going to approach the Chapter 12 case load in a different matter [sic], going forward. Fine. He can do that. You know, it presumably is within his prerogative to do that with respect to newly filed cases. But in cases that are on my docket—and you have to understand I take a very, very strong view that once somebody is involved in a case, I expect the person who got started in that case to discharge the obligations in that case. I feel very strongly that the bankruptcy system has enough inefficiencies that you can't just have people waltzing in and waltzing out.... Counsel are—when counsel come into a case, they come into the case until the case is closed or until they have been allowed to resign from their position in that case on motion to the Court.
>
> That reflects this Court's local rules. That reflects the view of Courts around the country that once a party—once somebody has become engaged as an officer of the Court in a pending case, you can't just say, well you know what, I'm tired of this, I'm moving on.
>
> ***
>
> So I view this through the lens of the officer of the Court seeking to resign from a pending case. And I feel very strongly that the parties in interest in a case should not be deprived of the experience that a particular individual has in that case without very good reason.

(*Id.* at 6–8). Later in the hearing, Judge Shea–Stonum urged counsel "to look at our local rule on resignation of counsel

because I do think it's important here." (*Id.* at 29). She also offered the UST an opportunity to file a supplemental brief weighing in on the specific issue she had raised, i.e.: not whether the UST has the initial administrative power to appoint the Trustee, but rather whether, once a Trustee *is* appointed, the UST has the power to "dis-appoint" or, even more specifically, whether the bankruptcy judge has any role with respect to any attempted resignation of the Trustee in a case pending on the judge's docket. Finally, Judge Shea–Stonum inquired of the Trustee, who was present at the hearing, whether requiring him to continue in the three cases until their completion would imposing "some intolerable hardship." (*Id.* at 34). The Trustee responded that it would not. (*Id.*).

The UST filed a supplemental brief on March 2, 2001, wherein he argued that the designation of a Trustee as an "officer of the court" does not give the bankruptcy judge the authority to prevent a Trustee's resignation, even in an active case on the judge's docket.

On March 26, 2001, Judge Shea–Stonum issued a lengthy and well-reasoned Memorandum of Opinion and Order, *see* 259 B.R. 884, 889 (Bankr.N.D.Ohio 2001), where she rejected all of the UST's arguments as follows in summary:

> First, § 324 of the Bankruptcy Code is far from silent on the mechanics by which a trustee is removed from office, either by resignation or otherwise. Second, the various duties imposed on the UST, including that of appointing a standing chapter 12 Trustee, do not include accepting the resignation of the Trustee. In addition, multiple rules, including Ohio state rules and local rules

of both the District Court and the Bankruptcy Court for the Northern District of Ohio, prescribe the behavior of "officers of the court" and mandate that the Court, in its role as superintendent of its pending caseload, be involved in the resignation process of officers of the court, including the chapter 12 standing trustee.

(Bank.Doc. No. 31, at 7–8).[10]

This Court has carefully examined the records in these cases, including the transcript of the hearing on the UST's motion for reconsideration and the Memorandum of Opinion and Order of Judge Shea–Stonum.

 Finding no error, and mindful of the important case management duties of judges, for the reasons set forth in the Bankruptcy Judge's well-reasoned opinion, *see In re Brookover*, 259 B.R. 884 (Bankr. N.D.Ohio 2001), this Court AFFIRMS the Memorandum of Opinion and Order of March 26, 2001 and, by implication, the earlier Order of November 28, 2000.

IT IS SO ORDERED.

### *JUDGMENT ENTRY*

For the reasons set forth in the Memorandum Opinion and Order filed contemporaneously with this Judgment Entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED that the Orders of the Bankruptcy Court entered on November 28, 2000 (Bankr.Doc. No. 16) and March 26, 2001 (Bankr.Doc.Nos.31, 32) are AFFIRMED.

---

**10.** In her opinion, the Judge addressed in detail each of the arguments summarized here.