**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 22, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SCOTT A. WILLIAMS,

    Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA,

    Defendant - Appellee.

No. 20-4075
(D.C. No. 1:14-CV-00102-DBB)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MORITZ**, **BALDOCK**, and **EID**, Circuit Judges.
_____

Scott A. Williams appeals pro se the district court's grant of summary

judgment in favor of the United States and its dismissal of this action without

prejudice for lack of subject matter jurisdiction. Exercising jurisdiction under

28 U.S.C. § 1291, we dismiss the appeal because Williams raises no non-frivolous

argument for reversal of the district court's judgment.

---

    [*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.     Factual Background

The following factual summary is derived from the district court's recitation of the undisputed facts in its summary judgment order.

Williams was employed in Utah by STS Systems Integration (SSI), a defense contractor doing work for the Air Force related to the acquisition of F-16 aircraft by the Indonesia Air Force (IDAF).  SSI terminated Williams after an Air Force employee reported to her supervisor, Ned King, that Williams had shared certain documents with an IDAF officer that were not authorized for disclosure to IDAF.

King reported Williams' unauthorized disclosure to his supervisor, Chalon Keller.  As further described below, Williams later sued Keller for tortious interference with his employment relationship with SSI.

Keller and King reported Williams' unauthorized disclosure in a meeting with Donalene Knowley, the security manager over the F-16 foreign sales program. Knowley asked Williams to join that meeting, during which he acknowledged he had committed a violation when he allowed the IDAF officer to view the documents. Knowley advised Williams to report the incident to his supervisor at SSI, and he did so.

Knowley also advised Keller and King to report Williams' security violation to the Air Force's contracting officer, Clayton Archuleta.  After conferring with Knowley, Archuleta emailed a letter to Steve Doneghy, SSI's general manager, regarding Williams' security violation.  Archuleta asked what steps SSI would take to prevent such incidents in the future.  Keller did not participate in the preparation of

2

Archuleta's letter. Doneghy responded that SSI would reprimand Williams and suspend him without pay for one week and described other corrective measures. Archuleta was satisfied with SSI's response.

The next day, however, Doneghy advised Archuleta that he had decided to terminate Williams based on new information concerning Williams' job performance, which Doneghy did not specify. Doneghy delivered termination papers to Williams the following day. Doneghy later testified in a deposition that SSI's decision to terminate Williams was based on the new information combined with his recent security violation.

Doneghy testified that his only communications with the Air Force regarding Williams' status were with Archuleta. He had no communications with Keller regarding Williams.

## II. Procedural Background

Proceeding with counsel, Williams sued Keller in state court alleging tortious interference with his employment relationship with SSI. Invoking the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), as amended by the Federal Employees' Liability Reform and Tort Compensation Act of 1988, *see Salmon v. Schwarz*, 948 F.2d 1131, 1141-44 (10th Cir. 1991), the United States certified under 28 U.S.C. § 2679(d) that Keller was acting within the scope of her federal employment. It removed the case to federal court and substituted the United States as the defendant in place of Keller. The United States then moved to dismiss Williams' complaint, arguing it had not waived sovereign immunity against tortious interference claims.

3

*See* 28 U.S.C. § 2680(h) (exempting from liability under the FTCA claims arising out of "interference with contract rights").  Williams conceded the government's position as to sovereign immunity, but he challenged the substitution of the United States as the defendant under the FTCA based upon its certification that Keller was acting within the scope of her federal employment.

After converting the United States' motion to dismiss to a motion for summary judgment at Williams' request, the district court granted summary judgment in the government's favor, holding the undisputed facts demonstrated that its certification was correct.  The court then dismissed Williams' action without prejudice for lack of jurisdiction on the undisputed basis that the United States had not waived its sovereign immunity.

## III.    Discussion

### A.      Standards of Review

We review de novo the district court's grant of summary judgment. *Hardscrabble Ranch, L.L.C. v. United States*, 840 F.3d 1216, 1219 (10th Cir. 2016). In doing so, "we view the evidence in the light most favorable to the nonmoving party." *Id.*  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Under the FTCA, when a plaintiff brings a tort claim against a federal employee alleging some wrongful act or omission, the claim must proceed against the United States in federal court if the employee was acting within the scope of her

4

employment. *See* § 1346(b)(1). Williams disputed the government's certification under § 2679(d)(1) that Keller acted within the scope of her federal employment. We review that certification de novo. *See Richman v. Straley*, 48 F.3d 1139, 1145 (10th Cir. 1995). Because it was prima facie evidence that Keller's challenged conduct was within the scope of her employment, Williams, as the plaintiff, bore the burden of rebutting the certification with specific facts. *See id.*

Although Williams was represented by counsel in the district court, he is proceeding pro se on appeal. We therefore liberally construe his appeal briefs. *See Cummings v. Evans*, 161 F.3d 610, 613 (10th Cir. 1998). But he must follow the same procedural rules as other litigants. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

### B.    District Court's Reasoning

Under the FTCA, scope of employment is determined by reference to the state law where the alleged conduct occurred. *See Richman*, 48 F.3d at 1145. The district court applied a three-part test under Utah law to determine whether Keller was acting within the scope of her employment, considering (1) whether her conduct was of the general kind she is employed to perform; (2) whether it occurred during normal work hours and in her ordinary work location; and (3) whether her conduct was motivated, at least in part, by an intent to further her employer's interest. *See Birkner v. Salt Lake Cnty.*, 771 P.2d 1053, 1056-57 (Utah 1989).[1] Conceding that the first two

---

[1] The Utah Supreme Court later disavowed the second *Birkner* factor. *See M.J. v. Wisan*, 371 P.3d 21, 32 (Utah 2016) ("[W]e acknowledge that in today's business

criteria in this test were met, Williams focused on the third, arguing that Keller's conduct was not motivated by an intent to further the government's interest.

Williams primarily argued that Keller's conduct departed from an established plan to address SSI's deficiencies. He asserted there was strong evidence that Keller directed the drafting of Archuleta's letter to Doneghy at SSI. The district court rejected that assertion because Williams failed to cite to any undisputed fact supporting it. Nor did he show how such actions, if they were taken by Keller, showed she was motivated by something other than an intent to further the government's interest in maintaining the security of certain information.

Williams also asserted that, when SSI terminated his employment, Doneghy told him that "she wanted you gone." R. at 403 (internal quotation marks omitted). Assuming the "she" was a reference to Keller, the district court held this statement was inadmissible hearsay.

The district court ultimately held the undisputed facts showed that concerns regarding Williams' performance were addressed through a chain of authority, which failed to demonstrate that Keller was specifically motivated by something other than a concern for the government's interests.

---

world much work is performed for an employer away from a defined work space and outside of a limited work shift."). This change in Utah law is not relevant to Williams' appeal.

## C. Williams' Inadequate Briefing on Appeal

The United States contends that Williams' appeal should be dismissed without further consideration because he failed to meet the minimum requirements for presenting his arguments by citing no caselaw and providing no citations to the record supporting any of the numerous factual assertions he makes. Federal Rule of Appellate Procedure 28(a)(8)(A) requires an appellant's opening brief to "contain . . . citations to the authorities and parts of the record on which the appellant relies." The government argues that citations to the record are particularly important in this appeal given that Williams is challenging the district court's summary judgment ruling. We note that, even after the United States pointed out this defect in Williams' opening brief, he provided no citations to the record in his reply brief.

Inadequacies in an appellant's briefing may disentitle him to appellate review. *See Garrett*, 425 F.3d at 841. Regarding record citations in particular, we have emphasized that "the court cannot take on the responsibility of serving as the litigant's attorney in . . . searching the record." *Id.* at 840. In *Garrett*, the appellant's briefs were "wholly inadequate to preserve issues for review" where they "contain[ed] no argument of substance" and included no citations to the record. *Id.* at 840-41. But we ultimately declined to consider the merits of the appeal due to the disrespectful and scurrilous tone of the appellant's briefs. *See id.* at 841.

In a later case, we again cataloged the many deficiencies in the appellants' briefs. *See MacArthur v. San Juan Cnty.*, 495 F.3d 1157, 1160-61 (10th Cir. 2007). But we chose not to dismiss their appeal on that basis because we "underst[ood]

7

enough about [their] arguments to conclude that they [were] meritless." *Id.* at 1161. We noted, however, that "[t]here is a difference . . . between understanding the [appellants'] arguments and judging them worthy of a full merits review." *Id.* Exercising "our inherent authority to dismiss an appeal presenting no arguably meritorious issue for our consideration," we dismissed the appeal because all of the appellants' arguments were frivolous. *Id.* (internal quotation marks omitted).

### D. Williams' Appeal Arguments are Frivolous

Unlike the appellant's briefs in *Garrett*, Williams' briefs do not exhibit a disrespectful tone. But as in *MacArthur*, although we understand his contentions on appeal despite his briefing deficiencies, we dismiss Williams' appeal because his arguments are frivolous. "An appeal is frivolous when the result is obvious, or the appellant's arguments of error are wholly without merit." *Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987) (rehearing en banc) (internal quotation marks omitted).

Williams initially asserts that Keller's conduct was not of the general kind she was employed to perform. This contention is frivolous because he does not challenge the district court's ruling that he conceded the first Utah criterion for determining scope of employment had been met. *See* R. at 403. Moreover, even if that argument was forfeited rather than waived, Williams fails to argue for plain error review on appeal, *see Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011) ("[T]he failure to argue plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court.").

8

Williams next argues that Keller negligently directed King and Archuleta to pursue his removal and termination by SSI. He refers generally to Keller's supervisor's deposition, *see* Aplt. Opening Br. at 4, but he fails to provide the court with any citation to the record. And the contention is frivolous because Williams does not explain why Keller's "negligence" in performing her Air Force job shows that she was not motivated, at least in part, by a concern for the government's interests. *See Birkner*, 771 P.2d at 1057. Williams likewise fails to explain how Doneghy's statement to him that "[w]e would not be here if not for the security violation," Aplt. Opening Br. at 5 (internal quotation marks omitted), shows that Keller's conduct was not motivated by an intent to further the government's interests.

Williams next asserts that Keller's jealousy of and animosity toward him show that she was not motivated by a concern for the government's interests. But he provides no record citations for the numerous facts he recites.[2] He also fails to indicate where in the record this issue was raised and ruled on by the district court, as

---

[2] For instance, Williams asserts that "[t]he entire F-16 IB branch knew it was a hit job by Keller and her loyal subordinates." Aplt. Opening Br. at 5. He further claims that, as confirmed by emails, texts, and phone calls, the morale in the program was damaged by his termination. And he relates incidents when Keller screamed at him in front of 60 personnel and when Keller was "offended" and "furious" when an IDAF colonel asked Williams multiple F-16 technical questions while ignoring Keller. *Id.* Williams further claims that Keller had accused him of "'crossing the line' with professional relationships and the IDAF." *Id.*

required by 10th Cir. R. 28.1(A).[3] Nor does he argue for plain error review on appeal. *See Richison*, 634 F.3d at 1131.

Williams also appears to argue the district court's hearsay ruling was erroneous because Doneghy stated "she wanted you gone" "directly to [Williams], face to face." Aplt. Opening Br. at 6 (internal quotation marks omitted). But Williams relied solely on Doneghy's out-of-court statement repeating another out-of-court statement by Keller, as related in Williams' deposition. *See* R. at 229; *id.* at 403 (district court's ruling that "Doneghy's statement to Williams about something Keller may have said is inadmissible hearsay"). Thus, Williams' contention that Doneghy spoke directly to him fails to show these out-of-court statements were not hearsay. *See* Fed. R. Evid. 801(c)(1) (defining hearsay, in part, as "a statement that . . . the declarant does not make while testifying at the current trial or hearing").[4]

Finally, Williams' argument that "[t]he case should go to [a] jury trial" because the district court's "decision to dismiss is flawed," Aplt. Opening Br. at 5, is

---

[3] Although we are not obligated to do so, we have reviewed Williams' response to the United States' motion in the record on appeal. He did not cite or rely on any of the facts he now asserts regarding his relationship with Keller in arguing she acted outside the scope of her federal employment. *See* R. at 232-35.

[4] Williams also appears to contend that the district court erred in excluding as hearsay statements about who contributed to the substance of Archuleta's letter to Doneghy. *See* Aplt. Opening Br. at 6. But the court never made such a ruling. It held that the undisputed facts did not support his assertion that Keller directed the drafting of Archuleta's letter. *See* R. at 398 & n.43; *id.* at 403.

10

frivolous because he fails to develop any arguably meritorious argument of error in the district court's summary judgment ruling.

## IV.     Conclusion

Williams' appeal is dismissed.

Entered for the Court


Allison H. Eid
Circuit Judge